**BURSOR & FISHER, P.A.**
L. Timothy Fisher*
Brittany S. Scott*
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel:  (925) 300-4455
Fax: (925) 407-2700
E-Mail: ltfisher@bursor.com
            bscott@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot**
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**THOMPSON LAW GROUP, PLLC**
Jason S. Thompson, ISB # 8985
350 N. Ninth Street, Suite 500
Boise, ID 83702
Telephone: (208) 342-7880
Facsimile: (208) 947-2424
jason@gtidaholaw.com

*Pro Hac Vice*
**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BENJAMIN BIRDSALL, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>   v.<br><br>BRIGHAM YOUNG UNIVERSITY–IDAHO, INC.,<br><br>                       Defendant. | Civil Action No.: 20-cv-00270-CWD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Benjamin Birdsall ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Brigham Young University-Idaho, Inc. ("BYU" or "Defendant").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.      This is a class action lawsuit on behalf of all people who paid tuition and fees for the 2020 Winter Term at BYU, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for which they paid, and/or the services or which their fees were paid, without having their tuition and fees refunded to them.

2.      BYU is part of a private research university with a total enrollment of approximately 19,211 students.  The university offers 96 undergraduate degrees.  BYU also operates an online program at a substantially discounted price, which offers various undergraduate courses.

3.      BYU operates on academic trimesters.  The Winter 2020 Term began on January 8, 2020 and ran through April 9, 2020.

4.      Plaintiff and BYU entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.  The terms of the contractual agreement where set forth in publications from Brigham Young University - Idaho, including BYU's Academic Year 2019-2020 Course Catalog ("Course Catalog").[1]

---

[1] Academic Year 2019-2020 Catalog,
https://www.byui.edu/catalog/#/content/5ab3e6e51104a1001a2e0637, last visited September 10, 2020.

1

5.      When Plaintiff and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Winter 2020 Term, Plaintiff and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying for selected courses.

6.      The Course Catalog provided Plaintiff and Class Members with information regarding the courses offered, the credits offered, and course requirements.  An exemplar of the Winter Term Course Catalog is below:

Software Engineering I – CS 364

- Includes lab credit and requires students to work with others to generate software engineering documentation

## CS364 - Software Engineering I

### Description
Software engineering overview: software requirements engineering including elicitation and specification; software design

### Unique Course Requirements
Each student is required to work with others to generate software engineering documentation.

### Contact Hours

Lecture  (1 hour / credit) _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  3

Lab  (1-3 hour / credit) _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  1

Guided Instruction  (1-3 hour / credit) _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  0

### Course Learning Outcomes (CLO's)

1. Demonstrate application of engineering principles to software development
2. Demonstrate ability to "play well" with others
3. Select an appropriate approach to eliciting, documenting, and reviewing requirements
4. Select an appropriate approach for documenting and reviewing a design

Technical Communication – CS308

- Includes lab hour and presenting to technical audiences, critique peer performance in written and oral communications.

## CS308 - Technical Communication

### Description

Technical writing and presentation to technical audiences; professional communication including resumes' and job interview; collaboration

### Contact Hours

Lecture  (1 hour / credit) _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  3

Lab  (1-3 hour / credit) _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  1

Guided Instruction  (1-3 hour / credit)  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  0

### Course Learning Outcomes (CLO's)

1. Write for technical audiences
2. Present to technical audiences
3. Demonstrate effective interviewing and resume writing skills
4. Critique peer performance in written and oral communication

7.      Other publications from BYU reference the in-person nature of the Winter 2020 Term course offerings, including course specific syllabi and the University's Policies and Procedures,[2] which detail the policies, procedures, and expectations of BYU students.  The Policies and Procedures describe the policies regarding in-person education and the importance of in-person class attendance.  *See id.* at Attendance ("To ensure continuity, students must make up missed work.  In most cases, repeated absences will result in a lower grade or failure.").

8.      BYU's Winter 2020 Term commenced on or around January 8, 2020 and was scheduled to conclude on or around April 9, 2020.  Plaintiff and Class Members' payment of tuition and fees were intended to cover in-person education, experiences, and services for the

---

[2]https://www.byui.edu/catalog#/policies?expanded=Tuition%2C%20Fees%20and%20Other%20Financial%20Information (last visited Sept. 9, 2020)

entirety of the Winter 2020 Term.

9.      On March 13, 2020, BYU, through a campus announcement, announced that because of the global COVID-19 pandemic, its campus would be closed and courses would transition to online and remote learning.

10.     BYU did not hold any in-person classes from March 12, 2020 through the end of the Winter 2020 Term.  Classes that continued after March 12th were only provided in an online format, with no in-person instruction.

11.     As a result of the closure of BYU's facilities, BYU did not deliver the educational services, facilities, access and/or opportunities that Plaintiff and the putative class contracted and paid for.

12.     Plaintiff and the putative class did not enter into an agreement with BYU for online education, but rather agreed to receive an in-person education from BYU.  Plaintiff and the putative class are therefore entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that BYU has not provided.  Even if BYU claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

13.     Plaintiff seeks, for himself and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees (or at minimum a portion thereof), proportionate to the amount of time that remained in the Winter 2020 Term when classes moved online and campus services ceased being provided.  Plaintiff seeks a return of these amounts on behalf of himself and the Class as defined below.

**PARTIES**

14.     Plaintiff Benjamin Birdsall is a citizen of Idaho who resides in Rexburg, Idaho. Mr. Birdsall is an undergraduate student at BYU – Idaho pursuing a degree in Software

Engineering.  The Software Engineering program at BYU relies extensively on in-person instruction, meaningful student presentations, peer collaboration, and access to other university facilities.  None of these resources are available to Mr. Birdsall while in-person classes are suspended.  Mr. Birdsall paid Defendant approximately $2,150 in tuition and fees for the Winter 2020 Term.  BYU has not provided Mr. Birdsall any refund of tuition or other mandatory fees, despite the fact that in-person classes have not been held since March 12, 2020.

15.     Prior to beginning the Winter 2020 Term, and prior to paying tuition and fees, Mr. Birdsall consulted the Course Catalog and enrolled in courses for the Winter 2020 Term.  In consulting the Course Catalog, Mr. Birdsall understood and believed that every course in which he enrolled was to be taught in-person.  At the time of registration, none of his courses were indicated as remote or online course-work.  Thus, the in-person nature of the courses was part of the benefit of the bargain, and Mr. Birdsall would not have paid as much, if any, tuition and fees for the Winter 2020 Term at BYU had he known that the courses would not, in fact, be taught in-person.

Indeed, Mr. Birdsall's Winter 2020 schedule, as seen on the BYU-Idaho's Personalized Access Portal, shows that he enrolled in courses that he believed to be in-person:

| 2020 Winter Semester |
|---|

1/3

t - Degree Information - Course History | BYU-Idaho's Personalized Access

| Course | Course Title | Course Program | Catalog | Credits | Grac |
|---|---|---|---|---|---|
| CS 124-10 | Intro to Software Development | Undergraduate Program | UG19 | 3.000 | Lette |
| ECEN 101-02 | Intro to ECEN | Undergraduate Program | UG19 | 1.000 | Lette |
| FDENG101-54 | Writing & Reasoning Foundations | Undergraduate Program | UG19 | 3.000 | Lette |
| GE 101-55 | College Success | Undergraduate Program | UG19 | 1.000 | Lette |
| MATH 111-01 | Trigonometry | Undergraduate Program | UG19 | 2.000 | Lette |
| MUSIC329-01 | University Band | Undergraduate Program | UG19 | 1.000 | Lette |
| REL 275C-08 | Teachings of Book of Mormon | Undergraduate Program | UG19 | 2.000 | Lette |

16.     By way of example, BYU's Course Catalog lists in-class assignments as a requirement for his course:

**GE101 - College Success**

Description
This extended orientation course helps students to learn and apply skills and patterns that will lead to a successful experience in college and throughout their lives.

Credits
1

Course Requirements

Complete all of the following
Freshman Only (30 completed credits or less)
This course is available to DAY (campus) students only.

Grading Type
Letter Grade

Unique Course Requirements
Students should bring a laptop or tablet to class for in-class writing assignments.

17.     Defendant Brigham Young University – Idaho, Inc. is a private university located

6

in Rexburg, Idaho.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

19.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this District.

## FACTUAL ALLEGATIONS

### *Plaintiff And Class Members Paid Tuition And Fees For The Winter 2020 Term*

21.     Plaintiff and Class members are individuals who paid the cost of tuition and other mandatory fees for the Winter 2020 Term.

22.     Winter 2020 classes at BYU began on or about January 8, 2020 and ended April 9, 2020.

23.     Plaintiff and Class members paid the cost of tuition for the Winter 2020 Term, as well as associated fees and costs.

24.     Examples of approximate tuition costs at BYU for the Winter 2020 Term are as follows:

- LDS Tuition:  $2,104 per term
- Non-LDS Tuition: $4,208 per term

25.     The tuition and fees described in the paragraphs above are provided by way of

7

example; total damage amounts – which may include other fees that are not listed herein but that were not refunded – will be proven at trial.

### *In Response To COVID-19, BYU Closed Its Campus And Cancelled All In-Person Classes*

26.     On March 13, 2020, BYU, through a campus announcement, announced that because of the global COVID-19 pandemic, its campus would be closed and courses would transition to online and remote learning.

27.     BYU has not held any in-person classes since March 12, 2020.  Classes that have continued have only been offered in an online format, with no in-person instruction.

28.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiff and the putative class contracted and paid for.  Plaintiff and the putative class are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided.  Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

29.     Plaintiff and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis.

30.    Defendant markets BYU's on-campus experience as a benefit of enrollment on its

website:



**Students take charge of their education by applying the Learning Model.**

It's one of the classic images of higher education: a lecture hall full of students listening passively while a professor discourses on the subject at hand. This kind of disconnected, one-way interaction is not what you'll find in a BYU-Idaho classroom. At this university, learning is defined by active engagement. Students are urged to take charge of their education and be fully involved in their own learning.

This approach, called the Learning Model, is based on three key steps: Prepare, Teach One Another, and Ponder and Prove. Students come to each class prepared to learn by studying assigned readings, completing required homework, and participating in online discussions and pre-class study groups. Through instructor-led discussions in class, students teach each other what they've learned-- honing and refining their own understanding in the process. Later, students internalize their learning through review, reflection, and application.

The Learning Model's proactive, engaged approach to education is a defining aspect of the BYU-Idaho experience that provides a pattern for continual learning and personal development long after graduation.

31.    The remote learning options are in no way the equivalent of the in-person

education putative class members contracted and paid for.  The remote education being provided

is not even remotely worth the amount charged to class members for the Winter 2020 Term.  The

tuition and fees for in-person instruction at BYU are higher than tuition and fees for other online

institutions because such costs cover not just the academic instruction, but encompass an entirely

different experience which includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study room;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands on learning and experimentation;

- Networking and mentorship opportunities.

32.     The fact that BYU students paid a higher price for an in-person education than they would have paid for an online education is illustrated clearly by the vast price difference in BYU's in-person, on-campus programs versus BYU's own online program.  BYU's in-person tuition per term is approximately $2,104 or $4,208, or $175 to $350 per credit.  However, tuition for BYU's online courses is offered at a discounted rate of $75 to $128.00 per credit.  Thus, the cost of one term of an in-person education at BYU is **more than twice** the cost of a term of online education at the same university.

33.     Through this lawsuit Plaintiff seeks, for himself and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Winter 2020 Term when classes moved online and campus services ceased being provided.  Plaintiff seeks return of these amounts on behalf of himself and the Class, as defined below.

## CLASS ALLEGATIONS

34.     Plaintiff seeks to represent a class defined as all people who paid BYU Winter 2020 tuition and/or fees for in-person educational services that BYU failed to provide, and whose tuition and fees have not been refunded (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities

related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

35.     Plaintiff also seeks to represent a subclass consisting of Class members who reside in Idaho (the "Subclass").

36.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

37.     **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through records in Defendant's possession.

38.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide services;

(b)     whether Defendant has provided the services for which Class and Subclass members contracted;

(c)     whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide;

(d)     whether Defendant has unlawfully converted money from Plaintiff, the Class and Subclass; and

(d)     whether Defendant is liable to Plaintiff, the Class, and Subclass for unjust enrichment.

39.     **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the Class and Subclass in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

40.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

41.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

42.     In the alternative, the Class and Subclass may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class and Subclass as a whole.

### COUNT I
### Breach Of Contract
### (On Behalf Of The Class And Subclass)

43.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-36 of this complaint.

44.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

45.     Plaintiff and BYU entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.  The terms of the contractual agreement where set forth in publications from Brigham Young University - Idaho, including BYU's Academic Year 2019-2020 Course Catalog ("Course Catalog").[3]

46.     When Plaintiff and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Winter 2020 Term, Plaintiff and Class Members viewed the Course Catalog to make specific course selections prior to registering

___

[3] Academic Year 2019-2020 Catalog, https://www.byui.edu/catalog/#/content/5ab3e6e51104a1001a2e0637, last visited September 10, 2020.

and paying tuition and fees for those selected courses.  Defendant's Course Catalog constitutes an offer to enter a contractual agreement.

47.     The Course Catalog provided Plaintiff and Class Members with information regarding the courses offered, the credits offered, and course requirements.

48.     Other publications from BYU reference the in-person nature of the Winter 2020 Term course offerings, including course specific syllabi and the University's Policies and Procedures,[4] which detail the policies, procedures, and expectations of BYU students.  The Policies and Procedures describe the policies regarding in-person education and the importance of in-person class attendance.  *See id.* at Attendance ("To ensure continuity, students must make up missed work.  In most cases, repeated absences will result in a lower grade or failure.")

49.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiff, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for Winter 2020 tuition.  Tuition for Winter 2020 was intended to cover in-person educational services from January through April 2020.  In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Winter Term.

50.     Defendant materially breached the parties' contractual agreement by failing to provide in-person education services for the entirety of the Winter 2020 Term.  The provisions of the contract breached by Defendant include, but are not limited to, the provision setting forth the details of in-person educational services as described in the Winter 2020 Course Catalog.  The Winter 2020 Course Catalog indicated classes would be administered in an in-person, on-campus setting.  The Course Catalog did not make any reference to the administration of these courses in

---

[4]https://www.byui.edu/catalog#/policies?expanded=Tuition%2C%20Fees%20and%20Other%20Financial%20Information (last visited Sept. 9, 2020)

an online format.

51.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above by failing to provide in-person educational services from March 13, 2020 through the end of the Winter 2020 Term.  Defendant has retained monies paid by Plaintiff and the Class and Subclass for their Winter 2020 tuition and fees, without providing them the benefit of their bargain.

52.     Plaintiff and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid.

53.     As a direct and proximate result of Defendant's breach, Plaintiff, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but no be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.  Defendant should return the pro-rated portion of any Winter 2020 tuition and fees for education services not provided since BYU shut down on March 12, 2020.

54.     Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not provided.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

55.     Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiff and Class Members that relate to those in-person educational services that were not provided after BYU shut down on or around March 13, 2020.

**COUNT II**
**Unjust Enrichment**
**(On Behalf Of The Class And Subclass In The Alternative)**

56.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-44 of this complaint.

57.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

58.     Plaintiff and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Winter 2020 tuition and other fees in exchange for certain service and promises.  Tuition for Winter 2020 was intended to cover in-person educational services from January through April 2020.  In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Winter Term.

59.     Defendant voluntarily accepted and retained this benefit by accepting payment.

60.     Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.  Accordingly, Defendant should return the pro-rated portion of any Winter 2020 tuition and fees for education services not provided since BYU shut down on March 13, 2020.

61.     It would be unjust and inequitable for Defendant to retain the benefit conferred by Plaintiff's and Class Members' overpayments.

62.     Defendant should be required to disgorge all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

**COUNT III**
**Conversion**
**(On Behalf Of The Class And Subclass)**

63.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-50 of this complaint.

64.    Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

65.    Plaintiff and members of the Class and Subclass have an ownership right to the in-person educational services they were supposed to be provided in exchange for their Winter 2020 tuition and fee payments to Defendant.

66.    Defendant intentionally interfered with the rights of Plaintiff, the Class, and Subclass when it moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

67.    Plaintiff and members of the Class and Subclass demand the return of the pro-rated portion of any Winter 2020 tuition and fees for education services not provided since BYU shut down on March 13, 2020.

68.    Defendant's retention of the fees paid by Plaintiff and members of the Class and Subclass without providing the educational services for which they paid, deprived Plaintiff, Class, and Subclass members of the benefits for which the tuition and fees paid.

69.    This interference with the services for which Plaintiff and members of the Class and Subclass paid damaged Plaintiff and Class and Subclass members in that they paid tuition and fees for services that will not be provided.

70.    Plaintiff, Class, and Subclass members are entitled to the return of pro-rated portion of any Winter 2020 tuition and fees for education services not provided since BYU shut down on March 13, 2020.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendant, as follows:

A.   For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and Subclass and Plaintiff's attorneys as Class Counsel;

B.   For an order declaring the Defendant's conduct violates the statutes referenced herein;

C.   For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

D.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.   For prejudgment interest on all amounts awarded;

F.   For an order of restitution and all other forms of equitable monetary relief;

G.   For injunctive relief as pleaded or as the Court may deem proper; and

H.   For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable of right.

Dated:  September 11, 2020                         Respectfully submitted,

                                         **BURSOR & FISHER, P.A.**

                                         By: _/s/ L. Timothy Fisher_
                                                  L. Timothy Fisher

                                         L. Timothy Fisher*
                                         Brittany S. Scott*
                                         1990 N. California Blvd., Suite 940
                                         Walnut Creek, CA 94596
                                         Tel:  (925) 300-4455
                                         Fax: (925) 407-2700
                                         E-Mail: ltfisher@bursor.com
                                                     bscott@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot**
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**THOMPSON LAW GROUP, PLLC**
Jason S. Thompson, ISB # 8985
350 N. Ninth Street, Suite 500
Boise, ID 83702
Telephone: (208) 342-7880
Facsimile: (208) 947-2424
jason@gtidaholaw.com

*Pro Hac Vice*
**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

                                                    */s/ L. Timothy Fisher*
                                                    L. Timothy Fisher